UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

TAMMY CRABTREE,                          )
                                         )
        *Plaintiff*,                     )
                                         )
v.                                       )        No. 3:20-cv-00263-TRM-SKL
                                         )
COMMISSIONER OF SOCIAL SECURITY,         )
                                         )
        *Defendant*.                     )

## REPORT AND RECOMMENDATION

Plaintiff Tammy Crabtree ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Each party moved for summary judgment [Doc. 22 & Doc. 24] and filed supporting briefs [Doc. 23 & Doc. 25]. This matter is now ripe, and for the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for summary judgment [Doc. 22] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 24] be **GRANTED**; and (3) the decision of the Commissioner be reversed and remanded for further proceedings.

## I.    ADMINISTRATIVE PROCEEDINGS

As reflected in the transcript of the administrative proceedings [Doc. 16 ("Tr.")], Plaintiff protectively filed an application for DIB on November 16, 2016, alleging disability beginning August 4, 2016. Her claims were denied initially and on reconsideration. A hearing on Plaintiff's claims was held before an administrative law judge ("ALJ") on July 26, 2018, and a supplemental hearing was held on March 12, 2019. On June 18, 2019, the ALJ issued an unfavorable decision, finding that Plaintiff was not under a "disability" as defined in the Social Security Act (the "Act")

at any relevant time. The Appeals Council denied Plaintiff's request for review on April 12, 2020, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action on June 15, 2020.

## II. BACKGROUND

Plaintiff was born on August 31, 1965 (Tr. 66), making her a "person closely approaching advanced age" on her alleged onset date and on the date of the ALJ's decision. 20 C.F.R. § 404.1563(c). She has a high school education and is able to communicate in English. She has past relevant work as a transcriptionist, which is classified in the Dictionary of Occupational Titles ("DOT") as a skilled job, performed at the sedentary exertional level.

In her November 16, 2016, Disability Report, Plaintiff alleged disability due to: 1) "Low Back Pain, hip pain, Leg and feet pain"; 2) Neuropathy in feet and legs; 3) "Tingling in hands, both wrists"; 4) Ringing in ear, hearing loss; 5) Hypothyroidism; 6) High blood pressure, 7) "Trouble sleeping, trouble concentrating and remembering" (Tr. 210). In preparing this report and recommendation, Plaintiff's medical records have been thoroughly reviewed.

Plaintiff testified at a hearing before the ALJ on July 26, 2018 (Tr. 47-65). At the supplemental hearing on March 12, 2019, a Vocational Expert ("VE") testified (Tr. 33-45). Plaintiff was represented by counsel at both hearings. The hearing transcripts have been carefully reviewed.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

2

of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010) (citations omitted).

3

### B.    The ALJ's Findings

The ALJ found Plaintiff meets the insured status requirements through June 30, 2021.  At step one of the process, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability date, August 4, 2016.  At step two, the ALJ found Plaintiff had the following severe impairments: 1) mild degenerative disc disease status post lumbar discectomy, and 2) osteoarthritis status post arthroscopic bilateral shoulder Mumford procedure (Tr. 15).  The ALJ also found Plaintiff had a number of nonsevere conditions: 1) hypothyroidism, 2) hypertension, 3) monoclonal gammopathy, 4) restless leg syndrome, 5) Charcot-Marie-Tooth disease ("CMT")[1], 6) peripheral neuropathy, 7) bilateral carpal tunnel syndrome, and 8) bilateral plantar fasciitis (Tr. 15-16).  Finally, the ALJ found Plaintiff's alleged hearing loss, right hip pain, and depression were not medically determinable impairments (Tr. 17).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18). Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following additional limitations:

- She can frequently climb ramps and stairs.

- She can frequently stoop, crouch, crawl, and kneel.

- She can only occasionally balance.

- She can never climb ladders, ropes, or scaffolds.

---

[1] "Inherited neuropathies, collectively known as Charcot-Marie Tooth (CMT) disease, are a group of genetically and phenotypically heterogeneous peripheral neuropathies associated with . . . variations in over 70 distinct genes."  Chiara Pisciotta & Michael E. Shy, Ch. 88 Inherited Peripheral Neuropathies, Merritt's Neurology (13th ed. 2015).

4

- She cannot work around hazards such as exposed heights and moving mechanical parts.

(Tr. 18).

At step four, the ALJ found Plaintiff was capable of performing her past relevant work as a transcriptionist, a skilled job performed at the sedentary exertional level (Tr. 22). In the alternative, the ALJ found Plaintiff was capable of performing other types of work with jobs existing in substantial numbers in the national economy, including as an assembler, inspector/tester, and production worker (Tr. 24).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Act from the alleged onset date through the date of the decision.

## IV.    ANALYSIS

Plaintiff submits the ALJ's decision is not supported by substantial evidence. She asks that the ALJ's decision be reversed and benefits awarded, or in the alternative, that this matter be remanded for further administrative proceedings.[2]  She mainly argues the ALJ erred by categorizing a number of her impairments as nonsevere at step two, and by failing to account for functional limitations arising from those impairments when assessing her RFC [Doc. 23 at Page ID # 1373-79]. She also argues the ALJ "failed to provide good reasons for weight afforded to medical opinions." [Doc. 23 at Page ID # 1379-82].

---

[2] When the SSA "misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 175-76 (6th Cir. 1994); *see also Barker v. Comm'r of Soc. Sec.*, No. 1:15-cv-262-SKL, 2016 WL 3448583, at *3 n.1 (E.D. Tenn. June 17, 2016) (citing *Faucher*, 17 F.3d at 174).

5

## A.  Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence.  42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted).  The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).  Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833.  Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings.  *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted).  The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility.  *Garner*, 745 F.2d at 387.  The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may

not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B. Nonsevere Impairments

Plaintiff first argues the ALJ erred by classifying her CMT, peripheral neuropathy, monoclonal gammopathy, restless leg syndrome, bilateral carpal tunnel syndrome, De Quervain's releases, and bilateral plantar fasciitis as nonsevere impairments at step two. She argues "the ALJ mischaracterized the record by selectively focusing on specific portions of the record." [Doc. 23 at Page ID # 1378 (citations omitted)].

To be found disabled, "the ALJ must find that the claimant has a severe impairment or impairments" at step two. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). An impairment, or combination of impairments, will be found severe if the impairment(s) "significantly limit[ ] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The step two determination is "a de minimis hurdle," in that "an impairment will be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90). Further, as Plaintiff acknowledges, "'[t]he fact that some of [a

claimant's] impairments were not deemed to be severe at step two is . . . legally irrelevant' where other impairments are found to be severe." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). "An erroneous finding of nonseverity at step two is therefore harmless where the ALJ properly considers nonsevere impairments at later steps." *Id.* (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Gray v. Comm'r of Sec. Sec.*, 365 F. App'x 60, 61 (6th Cir. 2010)).

In this case, the ALJ found Plaintiff had severe impairments of mild degenerative disc disease status post lumbar discectomy and osteoarthritis status post arthroscopic bilateral shoulder Mumford procedure (Tr. 15). Accordingly, to the extent the ALJ erred in finding that Plaintiff's CMT, peripheral neuropathy, monoclonal gammopathy, restless leg syndrome, bilateral carpal tunnel syndrome, De Quervain's releases, and bilateral plantar fasciitis are nonsevere impairments, such error is harmless as long as the ALJ properly considered these nonsevere impairments at later steps, which is addressed below.

### C.    RFC

Plaintiff argues the ALJ did not properly consider her CMT, peripheral neuropathy, monoclonal gammopathy, restless leg syndrome, bilateral carpal tunnel syndrome, De Quervain's releases, and bilateral plantar fasciitis "in a meaningful way" when assessing her RFC [Doc. 23 at Page ID # 1379]. She further argues the ALJ "violated the agency's promise to 'consider the combined effect of all of [her] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.'" [*Id.* (quoting *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 726 (6th Cir. 2014))].

A claimant's RFC is the most the claimant can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a

8

claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (citation omitted). An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Plaintiff has the burden of showing the severity of her conditions and their limiting effect on her ability to perform work functions. *See Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 425 (6th Cir. 2013) ("[T]his court has consistently affirmed that the claimant bears the burden of producing sufficient evidence to show the existence of a disability." (citing *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012)) (other citation omitted)).

Like Plaintiff in this case, Emard similarly argued the ALJ failed to consider his nonsevere impairments in assessing his RFC, and that the ALJ failed to consider the effect of all of his impairments in combination with one another. *Emard*, 953 F.3d at 851. The Sixth Circuit held that 20 C.F.R. § 416.945(e) ("Total Limiting Effects"),[3] requires ALJs to "consider the 'limiting effects of all of your impairment(s), even those that are not severe,'" when assessing RFC. *Emard*, 953 F.3d at 851. The court noted Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, has the same requirement. *Emard*, 953 F.3d at 851. In applying these rules, the court rejected the claimant's arguments:

> Although the ALJ did not specifically discuss the combined effect of Emard's impairments or mention Emard's nonsevere impairments in assessing his residual functional capacity, she stated that she had carefully considered the entire record and "all

---
[3] The corresponding regulation for DIB claims is 20 C.F.R. § 404.1545(e).

9

symptoms" at this step in the process. This court in *Gooch v. Secretary of Health & Human Services*, 833 F.2d 589 (6th Cir. 1987), concluded that an ALJ's statement that he had conducted "a thorough review of the medical evidence of record," along with the fact that the ALJ had considered the claimant's impairments individually, sufficed to show that the ALJ had considered the impairments in combination. *Id.* at 591-92. It explained that "the fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered," and "[t]o require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Id.* at 592. **As in *Gooch*, the ALJ's statements that she had considered the entire record and all of Emard's symptoms suggest that she had considered Emard's impairments in combination.**

Moreover, the ALJ specifically noted in her summary of the applicable law that she was required to comply with SSR 96-8p's mandate to "consider all of the claimant's impairments, including impairments that are not severe." District courts in this circuit have held that an ALJ need not specifically discuss all nonsevere impairments in the residual-functional-capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p. *See, e.g., Morrison v. Comm'r of Soc. Sec.*, No. 1:14-CV-1059, 2016 WL 386152, at *4 (W.D. Mich. Feb. 2, 2016), *aff'd*, No. 16-1360, 2017 WL 4278378 (6th Cir. Jan. 30, 2017); *Davis v. Comm'r of Soc. Sec.*, No. 1:14-CV-0413, 2015 WL 5542986, at *4 (W.D. Mich. Sept. 18, 2015). These decisions have relied on this court's decision in *White v. Commissioner of Social Security*, 572 F.3d 272 (6th Cir. 2009), where an ALJ's statement that she considered a Social Security Ruling pertaining to credibility findings sufficed to show that the ALJ complied with that ruling. *Id*. at 287. **The ALJ's express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by Emard's nonsevere impairments at step two of her analysis, fully support our conclusion that the ALJ complied with 20 C.F.R. § 416.945(e) and SSR 96-8p.**

*Emard*, 953 F.3d at 851-52 (emphasis added).

In this case, the ALJ likewise acknowledged that nonsevere impairments can affect a claimant's RFC. The ALJ then specifically cited SSR 96-8p and stated, "any such effect that the claimant's nonsevere impairments would have on her ability to function have been considered when formulating the claimant's [RFC] (SSR 96-8p)." (Tr. 17).

10

The ALJ also discussed the absence of functional limitations imposed by Plaintiff's nonsevere impairments at step two of her analysis, as required by *Emard*. Regarding Plaintiff's monoclonal gammopathy and restless leg syndrome, the ALJ noted Plaintiff "does not allege with specificity, nor does the record demonstrate, how this condition interferes with basic work activities," and that the record demonstrated the monoclonal gammopathy was "stable" in September 2018 (Tr. 15, 1157). The records Plaintiff cites in her brief do not contradict this characterization of the proof by the ALJ. The records reflect her providers' belief that her monoclonal gammopathy should be monitored, but that the condition remained stable over time (Tr. 322, 348 ("Will continue to follow her indefinitely because there is a 1% per year risk of progression to lymphoma, myeloma, amyloidosis over her lifetime."); 1156 ("She continues follow-up for her MGUS with hematologist. Since her last blood work was stable no bone marrow biopsy was recommended.")). Moreover, even now, Plaintiff does not explain how this condition actually limits her work activities. As for her restless leg syndrome, Plaintiff cites a record which indicates she was "assessed" with the condition on September 28, 2018, and the condition was noted to be chronic at that time (Tr. 1157). The record does not discuss the severity of the condition or imply any functional limitations arising from the condition.

Regarding Plaintiff's CMT and peripheral neuropathy, the ALJ acknowledged Plaintiff's testimony that she has difficulty walking and balancing due to pain and numbness in her ankles and legs, which the ALJ found consistent with notes from a physical exam in February 2016 that stated Plaintiff "reported some falls and complained of pain in her feet (2F/2)." (Tr. 15). However, the ALJ noted that the same February 2016 exam also yielded a number of normal findings, like no dizziness or tremor, normal strength, and normal fine motor skills (Tr. 16). The ALJ also noted that "physical examinations throughout the relevant period . . . generally note normal gait and

unremarkable lower extremity inspections with full strength and sensation" (Tr. 16 (citing a number of different records reflecting normal findings regarding Plaintiff's lower extremities and gait)).

Plaintiff cites various records in support of her argument that the ALJ erred in assessing her RFC by failing to include additional restrictions due to her CMT and peripheral neuropathy. For example, in November 2016, Plaintiff underwent various studies which ultimately were "suspicious for a mild axon-losing peripheral neuropathy" (Tr. 812), and one of her providers noted a "limping gait" (Tr. 538). Plaintiff also points out that her orthopedic provider speculated her back issues might stem from her CMT and peripheral neuropathy (Tr. 969), and that a neurology provider diagnosed her with CMT and continued her medication in September 2018 (Tr. 1156-57). The CMT was described as "Stable" at that time (Tr. 1157). The ALJ discussed the records from each of these providers, but also weighed the records against Plaintiff's numerous normal physical exam findings as discussed above. "Disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Dyson*, 786 F. App'x 586 at 589 (further stating that "[n]one of Dyson's records shed light on his level of impairment during that relevant time. And the evidentiary burden is Dyson's to carry.").

Regarding Plaintiff's carpal tunnel syndrome and De Quervain's releases, the ALJ acknowledged Plaintiff's treatment notes reflected that she complained to her providers of pain, numbness, tingling, and decreased strength in her hands. The ALJ noted, however, that Plaintiff underwent bilateral carpal tunnel surgery, and that "the record regarding treatment for this condition is sparse following her release surgeries." (Tr. 16). In January 2017, as the ALJ noted, Plaintiff's orthopedic providers observed that she had improved range of motion and "negative Finkelstein" test results following a December 2016 wrist procedure (Tr. 16, 574). Moreover, in

12

October 2018, Plaintiff had full strength and was able to make a fist with both hands, she performed gross dexterous movements, and she admitted she "was able to manipulate buttons okay." (Tr. 16, 1045). Plaintiff cites to some records where she complained to providers of numbness and tingling in her hands after her wrist surgeries/releases, but no further treatment or carpal tunnel/De Quervain's diagnoses, and therefore nothing that contradicts or shows error with the ALJ's decision not to incorporate any further hand/wrist limitations beyond those inherent to a sedentary job that does not involve climbing ladders, ropes, scaffolds, or working around hazards like exposed heights or moving mechanical parts.

Regarding Plaintiff's bilateral plantar fasciitis, the ALJ noted the diagnosis, but emphasized that a June 2017 x-ray of both of Plaintiff's feet showed "no evidence of facture or bony abnormality," and it further showed Plaintiff's joints were "preserved," her soft tissues were "unremarkable," and there was "no evidence of radiopaque foreign body." (Tr. 1104, 16). The ALJ further emphasized Plaintiff was treated for this condition by her podiatrist with a series of injections, "which the record notes she has tolerated well" and which have "provided relief for the condition." (Tr. 16). By way of example, the ALJ noted Plaintiff received injections in her feet in July 2018, and was instructed to return to see her doctor in "3-4 weeks if needed," but Plaintiff did not return until December 2018 (Tr. 1096, 16). During the December 2018 exam, Plaintiff's provider noted Plaintiff's joint range of motion was within normal limits without crepitus in both feet and ankles (Tr. 1094).

Plaintiff cites records from her podiatrist, including treatment notes from a June 15, 2017 appointment, during which time she received injections for her plantar fasciitis [Doc. 23 at Page ID # 1364 (citing Tr. 718)]. She returned to the podiatrist one week later reporting increased pain, but did not receive additional injections at that time. She was instructed to return in three weeks

"if needed." (Tr. 717). She did not return until November 16, 2017, and was given injections in both feet at that time (Tr. 714). In April 2018, she reported to her neurologist that she had plantar fasciitis and that her last injection was "a few months ago." (Tr. 877). At that appointment, Plaintiff was able to stand up from her chair without using her hands, and could walk on her heels and toes, and "do tandem gait." (Tr. 878). A podiatrist record from July 18, 2018, reflects that Plaintiff "responded well to injectable prior," but that her plantar fasciitis is "getting painful again but not nearly as bad as it was originally." (Tr. 1096). As the ALJ noted, she was instructed to return in 3-4 weeks, but she did not return until about six months later, on December 6, 2018 (Tr. 1094). At that time she was given more injections, a splint (which she requested), instructions on how to stretch her foot, and medication (Tr. 1094).

As the Commissioner notes, the records Plaintiff cites do not show harmful error with the ALJ's decision to assess Plaintiff with an RFC covering only a limited range of sedentary work. They do show Plaintiff continued to seek and receive treatment for her plantar fasciitis, and that the treatment was effective to reduce her symptoms. "An impairment that can be remedied by treatment will not serve as a basis for a finding of disability." *Hicks v. Astrue*, No. 2:09-CV-161, 2010 WL 723796, at *10 (E.D. Tenn. Feb. 25, 2010) (quoting *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967)). Accordingly, I find Plaintiff has failed to show any harmful error in the ALJ's decision to classify Plaintiff's plantar fasciitis as a nonsevere impairment or in the ALJ's assessment of Plaintiff's RFC.

I also note the ALJ did discuss evidence relevant to all of Plaintiff's nonsevere impairments after step 2, even if the ALJ did not specifically refer to the nonsevere impairments by name. For example, the ALJ acknowledge Plaintiff's testimony about all of her impairments (Tr. 19), and discussed Plaintiff's normal physical exam findings (Tr. 20). The ALJ also addressed Plaintiff's

treating physician's opinion concerning Plaintiff's monoclonal gammopathy and CMT, but did not credit the opinion, which Plaintiff does not challenge (Tr. 21).

I **CONCLUDE** the ALJ met the requirements of § 404.1545(e) and SSR 96-8p, and adequately considered all of Plaintiff's impairments in assessing RFC. Plaintiff's arguments concerning the medical opinion evidence are addressed below; however, I find no error in that aspect of the ALJ's decision, either. Accordingly, I find any error at step 2 is harmless, and further, the ALJ's RFC assessment is supported by substantial evidence in the record and should not be disturbed. Plaintiff has the burden of showing the severity of her conditions and their limiting effect on her ability to perform work functions, and she has failed to show the RFC is not supported by substantial evidence. See *Watters*, 530 F. App'x at 425 ("[T]his court has consistently affirmed that the claimant bears the burden of producing sufficient evidence to show the existence of a disability." (citing *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012)) (other citation omitted)).

### D. Opinion Evidence

Plaintiff also argues the ALJ did not properly consider the opinions of the two state agency physicians who reviewed Plaintiff's medical file—Dr. Kanika Chaudhuri and Dr. Kendrick Morrison—and the opinion of Dr. J. Michael Lynch, a physical consultative examiner.

First, with respect to the opinions of all three doctors, Plaintiff argues the ALJ erred by not giving "good reasons" for the weight she assigned to their opinions [Doc. 23 at Page ID # 1379-80 (citing 20 C.F.R. § 404.1527)]. However, as the Commissioner points out, it is well-established that the ALJ is only required to give "good reasons" for the weight she assigns to the opinions of *treating* physicians. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). When weighing the opinion of a non-treating physician, as relevant here, the ALJ is only required to

*consider* the factors Plaintiff cites. 20 C.F.R. § 505.1527(c). There is no indication the ALJ failed to consider these factors; indeed, the decision reflects the ALJ considered and discussed evidence relevant to a number of these factors as applied to the opinions of all three doctors (Tr. 21-22). Plaintiff's argument in this regard is without merit.

Regarding the state agency physicians, Plaintiff contends that, "[d]espite stating she gave the opinions of these providers 'great weight,' the ALJ ignored portions of those opinions without any explanation." [Doc. 23 at Page ID # 1381 (citing Tr. 21)]. Presumably Plaintiff refers to the state agency doctors' opinions regarding Plaintiff ability to reach overhead, handle, and finger. The ALJ assessed no limitations in that regard, while the state agency doctors both limited Plaintiff to only "frequent" reaching overhead, handling, and fingering (Tr. 18, 71-72, 85-86). "The ALJ is charged with assessing a claimant's RFC 'based on all of the relevant medical and other evidence' of record." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (quoting 20 C.F.R. § 416.945(a)(3)). "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency [physician's] opinions verbatim; nor is the ALJ required to adopt the state agency [physician's] limitations wholesale." *Id.* (citing *Harris v. Comm'r of Soc. Sec.*, No. 1:13-CV-00260, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014)); *see also Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) ("[Reinartz] contends that an ALJ may not make a work-capacity finding without a medical opinion that reaches the same conclusion. The effect of a claimant's conditions on her ability to work, however, is a determination expressly reserved for the ALJ. Thus, the premise of Reinartz's argument . . . is wrong." (citations omitted)).

As discussed above, the ALJ's decision not to include any further limitations based on Plaintiff's carpal tunnel syndrome/De Quervain's releases is supported by substantial evidence and

should not be disturbed. Additionally, the ALJ also thoroughly addressed Plaintiff's shoulder issues, which would relate to her ability to reach overhead. The ALJ specifically found the evidence reflected improvement in Plaintiff's shoulder functioning following a Mumford procedure in August 2017, which occurred after both state agency physicians offered their opinions[4] (Tr. 20-21).

Regarding the consultative examiner, Dr. Lynch, Plaintiff argues the ALJ improperly discounted his opinion for the sole reason that the opinion was based "too heavily upon the claimant's subjective complaints." [Doc. 23 at Page ID # 1381 (quoting Tr. 22)]. Plaintiff points out Dr. Lynch performed an exam and reviewed Plaintiff's records, so, she contends, "[i]t is unclear how Dr. Lynch's [opinion] . . . was based solely on . . . subjective complaints." [*Id.* at Page ID # 1382]. As the Commissioner points out, Plaintiff mischaracterizes the ALJ's assessment of Dr. Lynch's opinion. The ALJ wrote:

> On October 22, 2018, the claimant participated in a consultative examination evaluating her physical conditions conducted by J. Michael Lynch, M.D. (28F). Based on his examination, Dr. Lynch opined the claimant would have difficulty with reaching, pushing, pulling, lifting, and carrying due to decreased range of motion of her neck and back (28F/6). Additionally, Dr. Lynch opined that "exposure to unprotected heights or dangerous machinery, climbing ladders and scaffolds would be unwise for this claimant" (28F/6). These opinions are partially consistent with the record, as imaging from December 2018 revealed moderate degenerative changes at C5-6 with additional mild degenerative changes at L5-S1 and in the lower thoracic spine (32F/4). Such evidence suggests that the claimant is limited by her degenerative disc disease and back impairment. However, the undersigned gives little weight to Dr. Lynch's opinions as he relied too heavily on the claimant's subjective complaints, such as pain, which is not a medically determinable impairment.

---

[4] Even with the frequent reaching, handling, and fingering limitation, Dr. Chaudhuri found Plaintiff was capable of performing her past relevant work (Tr. 72-74).

(Tr. 22).

Thus, the ALJ acknowledged that Dr. Lynch performed a one-time consultative exam on Plaintiff, and the ALJ explicitly found Dr. Lynch's opinions were only partially consistent with the record. This covers at least two of the factors listed in 20 C.F.R. § 404.1527.

Moreover, it was not improper for the ALJ to consider Dr. Lynch's reliance on Plaintiff's subjective complaints as a reason for discounting Dr. Lynch's opinion. *See Daniel v. Comm'r of Soc. Sec.*, No. 4:12-cv-64, 2014 WL 640706, at *7 (E.D. Tenn. Feb. 18, 2014) ("When a treating medical source's opinion is based on a claimant's subjective complaints and an ALJ properly finds the claimant's subjective complaints not credible, the ALJ can discount the treating medical source's opinion. (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007)). It is evident Dr. Lynch did rely on Plaintiff's subjective complaints. For example, although Dr. Lynch found, upon examining Plaintiff, that her muscle tone and bulk were "normal" in her extremities, she was able to make a fist, she had 5/5 power of handgrips bilaterally, she performed gross dexterous movements bilaterally, and she had a negative Tinel sign, he still found she could only frequently handle, finger and feel (Tr. 1051). When asked to identify the "particular medical or clinical findings . . . which support your assessment" regarding the fingering, handling, and feeling limitations, Dr. Lynch wrote, "neck & back pain." (Tr. 1051). There is no explanation as to how Plaintiff's neck and back pain would translate into limitations in these functions. Even when he specifically opined about Plaintiff's wrist function, he did not address these functions. Rather, he opined that Plaintiff had a "[d]ecreased ability to palmar flex her wrists," which would "give her some difficulty with respect to being able to **lift and carry**." (Tr. 1047 (emphasis added)). Earlier in his report he indicated Plaintiff's wrists were "stiff" because of a "surgical scar" (Tr. 1046).

18

Accordingly, I find Plaintiff has not shown any harmful error with the ALJ's assessment of the opinion evidence in this case. As such, my conclusion about Plaintiff's RFC is not altered by Plaintiff's arguments concerning the ALJ's consideration of the opinions of Dr. Chaudhuri, Dr. Morrison, or Dr. Lynch.

Much of the argument section of Plaintiff's brief is a restatement of the facts. I have nevertheless carefully considered the evidence she cites and whether it shows a lack of substantial support for the ALJ's decision. I conclude it does not. That is, Plaintiff has not "persuasively shown that the ALJ erred in conducting [the] difficult task" of weighing the record evidence, as it pertains to Plaintiff's impairments or her RFC. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (holding "we see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence"); *accord DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry picking" allegations are seldom successful because crediting them would require courts to re-weigh record evidence). She cites some evidence the ALJ did not explicitly discuss, but the ALJ is "not required to explain every piece of evidence in the record." *Bayes v. Comm'r of Soc. Sec.*, 757 F. App'x 436, 445 (6th Cir. 2018).

I **FIND** the ALJ properly incorporated into her RFC determination the functional limitations she appropriately found to be credible and supported by the record. Even if there is some evidence to support Plaintiff's position, the ALJ's decision is supported by substantial evidence in the record "and is therefore conclusive." *Schmiedebusch*, 536 F. App'x at 648 (citing *Colvin*, 475 F.3d at 729); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the

Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

## V.     CONCLUSION

For the above state reasons, I **RECOMMEND**[5] that:

1) Plaintiff's motion for summary judgment [Doc. 22] be **DENIED** for the reasons stated herein;

2) The Commissioner's motion for summary judgment [Doc. 24] be **GRANTED**; and

3) The Commissioner's decision denying benefits be **AFFIRMED**.


ENTER:


s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).